## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BARBARA J. TIPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06-3216 |
| | ) | |
| LAIDLAW TRANSIT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendant's motion for summary judgment.

The motion is allowed.

This is an action for sexual harassment/hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>  Plaintiff Barbara J. Tipps was once employed as a bus driver for Defendant Laidlaw Transit, Inc. (which is incorrectly named as Laidlaw Transit Services, Inc.) ("Laidlaw").  Laidlaw claims that one brief incident

of unprofessional conduct serves as the basis for her complaint. Laidlaw asserts it is entitled to summary judgment for at least two reasons: (1) the single incident of which Tipps complains falls short of the "severe or pervasive" harassment that is actionable under Title VII; and (2) Laidlaw's response to the incident was entirely reasonable and appropriate so there is no basis for liability.

## I. BACKGROUND

Laidlaw provides school transportation to students in school districts across the country. One of Laidlaw's school bus operations is in Springfield, Illinois. At the time of the events in this case, Laidlaw's Springfield branch was run by Doris Shelton, then the branch manager.[1] Tipps was hired as a bus driver on or about February 18, 1999. Laidlaw's employee handbook contains a "Sexual Harassment Policy" which, among other things, defines sexual harassment, gives examples of conduct that might constitute sexual harassment, and instructs employees how to report an incident of sexual

---

[1]According to Laidlaw's motion, after the events at issue in this case but prior to her deposition, Shelton married and changed her last name to "Martin." Although there are some references in the record to "Martin," the Court will refer to her as "Doris Shelton" as the parties generally do in the briefs.

harassment.  Tipps signed a document on August 11, 2000, acknowledging her receipt of the employee handbook containing the Sexual Harassment Policy.  Prior to the incident of which she complains in this suit, Tipps admittedly engaged in physical contact and sexual conversations with co-workers while on the job.  She sat on the laps of male co-workers, including Dan Motley and Wayne Truax, on more than one occasion.

The incident which serves as the primary basis for this lawsuit occurred on September 23, 2003.  Another bus driver named John Hull brought what he claims was a "gag gift" to work.  Hull gave what is described as "pink, battery operated, vibrating dildo" to Dan Motley and asked him to give it Tipps.  Laidlaw alleges that according to Hull (who says he believed Tipps was Motley's "girlfriend"), he intended the gift to be consistent with "the daily joking around and smart aleck comments we all make among the group."  Hull considered Tipps his "friend" and he "had no intention of giving offense."  Tipps disputes many of these statements, stating that there is no way of knowing what Hull believed.

Laidlaw has a radio system with which someone at the "Laidlaw base"

3

can radio messages to all the drivers out in the field driving routes.  Laidlaw alleges that on the afternoon of September 23, while Tipps was out driving a bus route, Motley got on the radio system and told Tipps that "he had a gift from John Hull for [her] and that [she would] get it when [she] got back to the base."  He also told her that this gift "would put a smile on [her] face."  Motley did not give any indication of what the gift might be.  Tipps disputes this on the basis that the statement was made by John Hull, the accused harasser, not Motley.

When Tipps returned from her bus route, she encountered Motley at the front of the building.  Tipps asked Motley what and where her gift was, and Motley told her that it was in the pocket of the jacket he was holding, but he warned Tipps, in a "serious" manner, that she "wouldn't want it." Tipps asked Motley for the gift again, but he refused to give it to her.  Tipps then grabbed Motley's jacket, which he attempted to pull away from her. Tipps, however, turned her body around so as to prevent Motley from pulling the jacket away, reached out of the pocket, and pulled out the dildo. Tipps then decided to report the incident to Shelton immediately.  She

asked Motley and Zachary Pickett, another employee who had been present, to come with her.  She also enlisted Diane Shepard, her union steward, to come along, and the four of them went to Shelton's office.  After entering Shelton's office, Tipps put the dildo on Shelton's desk and said, "This [is] the gift that John Hull [gave] Dan Motley to give me."  Shelton was "stunned" at first, but she then called Jan Moser, Operations Manager, to come and assist her with the situation.  Moser arrived, and Shelton then asked Tipps where the dildo came from.  Tipps explained that Hull gave it to Motley and asked Motley to give it to her.  Shelton asked Motley if Hull gave him the dildo, and Motley said "yes."  Shelton also asked Pickett how he was involved; he said that he was just a witness when Tipps retrieved the dildo from Motley's pocket.  Finally, Shelton told Tipps that she would talk to Hull about the incident.  At some point during this conversation, Shelton said that "if [she or Moser had] received the dildo," then Hull would have been fired."

Laidlaw alleges that after speaking with Tipps and Motley, Shelton immediately called Hull into her office to discuss the incident.   Hull

5

admitted to his behavior, but explained to Shelton that "it was a joke, everybody is out in front always horsing around, they're always talking about [sex]."  Hull seemed to be "genuinely sorry" and it appeared that "he had no idea that this would have offended" Tipps.  Shelton perceived Hull to be "upset that he had offended" Tipps.  In disputing these assertions, Tipps alleges that Laidlaw parses several "quotes" from Shelton's deposition even though she prefaced her testimony by stating she did not remember Hull's exact words.  Tipps also contends that Laidlaw inappropriately presents as fact several comments by Shelton regarding her feelings and beliefs.

Shelton later obtained written statements from Hull, Motley and Tipps regarding the incident.  Laidlaw claims that during Shelton's investigation, several employees came forward and stated that Tipps was "flirtatious" and had a "common practice" of "carry[ing] on" about her sexual encounters and lingerie in front of other employees, including Hull. In her deposition, Tipps denied flirting with anyone at work or discussing her lingerie with Motley.  Shelton also received a written statement from

Barb Kessel, another bus driver.  Kessel stated that in August 2003, she had been on a bus full of Laidlaw drivers who were traveling to Edwardsville to pick up a fleet of buses and drive them back to Springfield.  On this bus ride, Kessel saw Hull "patting" and "smacking" Tipps on her rear end. Tipps did not ask him to stop, but rather "smiled at him and laughed about it."  Laidlaw further alleges that, to the best of Shelton's knowledge, neither Hull nor Motley had been involved in any alleged sexual harassment (or any other disciplinary incidents) at any time prior to the incident on September 23, 2003.  Tipps disputes this on the basis that Shelton was aware that Tipps had previously been subjected to sexual harassment by Hull that involved the touching of the buttocks and inner thigh near her genitals on a trip to Edwardsville to pick up new busses the previous month.

After completing her investigation, Shelton issued letters to both Hull and Motley regarding their conduct.  The letter to Hull stated, in part:

> I fully understand that your intention was not to offend Barb Tipps or any other person here at Laidlaw.  However, subjects of a sexual nature are never appropriate while working for Laidlaw.  I also understand you felt that since there had been previous conversations concerning such subjects as her lingerie, you felt comfortable continuing with this style of joking.

7

However, even if Ms. Tipps or Mr. Motley had not been offended, there are children and other Laidlaw employees present here that we have to take into consideration. Our Sexual Harassment Policy is very clear about acceptable behavior as a Laidlaw employee. Please see attached policy.

Joking of this kind will not be tolerated. . . All employees have a personal responsibility to ensure the workplace is free from sexual harassment as defined in the policy, and to comply with the terms of the policy. When this policy is violated, the company has an obligation to take appropriate disciplinary action, up to and including dismissal. . . . I expect you to avoid this kind of behavior in the future, so that no further disciplinary action will be required.

The letter to Motley stated, in part:

I fully understand and agree that John Hull's behavior [in giving the dildo] was totally unacceptable. Your acceptance of the vibrator and your passing it on to Barb Tipps was also very inappropriate behavior.

*                    *                    *

Our investigation also revealed that you have engaged in conversations with Barb and others that were also of an inappropriate nature. Our Sexual Harassment Policy is very clear about acceptable behavior as a Laidlaw employee. Please see attached policy.

Joking of this kind will not be tolerated . . . All employees have a personal responsibility to ensure the workplace is free from sexual harassment as defined in the policy, and to comply with the terms of the policy. When this policy is violated, the

8

company has an obligation to take appropriate disciplinary action, up to and including dismissal.

Please control your behavior to avoid such inappropriate conduct so that no further disciplinary action will be required.

Laidlaw contends that after Shelton issued the letters, neither Hull nor Motley ever did or said anything inappropriate or of a sexual nature to Tipps again. In fact, no Laidlaw employee did or said anything inappropriate to Tipps after this incident. Tipps disputes this allegation, asserting it is immaterial that after the second documented incident of sexual harassment by Hull against Tipps, Hull and Motley discontinued harassing her.

In April 2004, Laidlaw terminated Hull after two incidents in which he allegedly made inappropriate comments. Dan Motley alleged Hull told him that Motley's daughter "has a nice rack on her." Also, Motley and another driver claimed that Hull had an inappropriate conversation with a female high-school student, in which Hull asked her out to dinner, asked her to wear a skirt, and said that he would like to take her picture. Hull denied these allegations, but Laidlaw terminated him nonetheless. In Hull's

termination letter, Shelton noted that Hull had been warned in October 2003 (after the incident at issue in this case) about violating Laidlaw's Sexual Harassment Policy.

Tipps has filed two charges of discrimination against Laidlaw with the Illinois Department of Human Rights ("IDHR"), both of which were cross-filed with the Equal Employment Opportunity Commission ("EEOC"). In her first charge filed on March 18, 2004, she alleged (1) sexual harassment; and (2) that her discharge from Laidlaw was in retaliation for complaining about sexual harassment. The IDHR dismissed this charge, and Tipps appealed the dismissal to the Illinois Court of Appeals, where it remains pending. The EEOC also issued Tipps a right-to-sue notice on this charge. She then brought the instant lawsuit. Tipps's second charge is immaterial to this case. No EEOC right-to-sue notice has yet been issued for that charge.

## II. ANALYSIS

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings,

10

depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "material fact" is a fact which may affect the outcome of the litigation, given the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes all facts and makes all reasonable inferences in favor of the non-moving party.  Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

B. Sexual harassment claim

11

(1)

In order to prevail on her sexual harassment claim, Tipps must prove that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating a hostile work environment; and (4) there is a basis for employer liability.  See Phelan v. Cook County, 463 F.3d 773, 783 (7th Cir. 2006).  Laidlaw asserts that Tipps's claim fails on the first, third, and fourth elements of this test.  Specifically, it alleges the single incident that forms the basis for Tipps's claim was neither severe enough to create a hostile work environment nor unwelcome, and even it had been, there still was no basis for employer liability given Laidlaw's reasonable response to her complaint.

In order to establish the third element of her claim, Tipps must show that the harassing conduct was "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." See McPherson v. City of Waukegan, 379 F.3d 430, 438 (7th Cir. 2004) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct.

2275 (1998)).  Moreover, in order to be considered "hostile," the work environment must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so."  Id. (quoting Faragher, 524 U.S. at 787).  Laidlaw argues Tipps cannot show that her work environment was objectively offensive.  Specifically, the "dildo incident" was not severe or pervasive enough to alter the conditions of her employment.

Laidlaw contends it is obvious that the alleged harassment in this case was not pervasive, given that it consisted of only one incident.  "There is no 'magic number' of incidents required to establish a hostile environment." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) (citations omitted).  One act of harassment can be enough if it is sufficiently egregious.  Id.  The Seventh Circuit has observed that it is often difficult to draw the line between actionable harassment and boorish behavior that is not actionable:

> Drawing the line is not always easy.  On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or

13

gestures; pornographic pictures. . . .  On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers. . . .  We spoke in <u>Carr</u> of 'the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing.'  . . .  It is not a bright line, obviously, this line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other.

<u>Baskerville v. Culligan International Co.</u>, 50 F.3d 428, 430-31 (7th Cir. 1995) (internal citations omitted).  In <u>Hostetler</u>, the court found that a co-worker who "nearly removed" the plaintiff's bra and twice tried to force his tongue into her mouth had committed harassment severe enough to be actionable; this "unwelcome, forcible physical contact of a rather intimate nature" was sufficient to create a hostile work environment even though it was not repeated.  218 F.3d at 806-08.  In <u>Worth v. Tyer</u>, 276 F.3d 249, 268 (7th Cir. 2001), the court found that "a supervisor's touching one's breast near the nipple for several seconds is severe enough" to constitute a hostile environment.

Laidlaw contends that the incident in this case was not nearly as severe as those which have been deemed sufficient to create a hostile work environment.  Tipps was not threatened, pinned against a wall or injured.

14

No one propositioned her, tried to remove her clothing or touched her in any way.  Laidlaw asserts that the harassment of which Tipps complains consisted solely of being exposed to a dildo for two minutes or less.

Laidlaw alleges that this case is analogous to situations which the Seventh Circuit has deemed not severe or pervasive enough to be actionable. In Pryor v. Seyfarth, Shaw, Fairweather & Geraldson, 212 F.3d 976, 977-78 (7th Cir. 2000), the plaintiff's supervisor asked her to look at pictures of women in bondage or black leather for no reason other he "just wanted [her] to see it."  The court deemed this to be "possibly suggestive or even offensive, but not so offensive as to constitute actionable harassment."  Id. at 978.  Laidlaw contends Tipps's claim must fail because "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficiently severe to constitute actionable harassment.  See Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998) (quoting Faragher, 524 U.S. at 788, 118 S. Ct. 2284).

(2)

Laidlaw asserts it is entitled to summary judgment because no

15

reasonable jury could find Tipps's work environment objectively hostile on the basis of the single incident at issue in this case.  In emphasizing that the "dildo incident" is the only event in the record which could conceivably be considered harassment, Laidlaw states Tipps makes the "bizarre claim" that she was further harassed by Doris Shelton when Shelton told her that if Hull had presented her or Jan Moser with the dildo, he would have been terminated for it.  According to Tipps, she was "offended that Laidlaw's management would make such a distinction between management and . . . rank and file employees and was intimidated by her manager's accusation." Laidlaw contends that Tipps intentionally misinterpreted Shelton's statement in that the distinction is not between management and rank and file employees, but between those who seem to invite inappropriate conduct with inappropriate conduct of their own (such as Tipps) and those who do not (Shelton and Moser).  Even accepting Tipps's misinterpretation, moreover, Laidlaw alleges that the comment is not an act of sexual harassment.

Tipps disputes Laidlaw's assertion that this case is about a single

16

incident.  She claims there is a pattern of sexual harassment but even if the Court only looked at the one incident, Tipps contends that being presented a pink, battery operated, vibrating dildo in the workplace is a sufficiently severe form of harassment to create a genuine issue of material fact.

Based on a review of the record, it appears the only other incident that could possibly be described as harassment is Tipps's assertion that she was "physically molested by Hull in August of 2003."  Tipps claims that Laidlaw "completely ignored" a firsthand incident report from a co-worker who was present.  As Laidlaw argues, however, the evidence in the record does not support Tipps's description of this incident as a "physical[] molest[ation]." Tipps does not dispute Laidlaw's allegation that according to Barb Kessel, when Hull was "patting" and "smacking" Tipps on the rear end, Tipps did not ask him to stop, but rather "smiled at him and laughed about it."  To the extent that Tipps points to this incident as part of a pattern of harassment, therefore, the Court agrees with Laidlaw's alternate argument that the August incident does not appear to be "unwelcome" harassment. The only evidence in the record is that Tipps was a willing participant.

17

Tipps also testified that prior to the September incident, she had never seen Hull engage in any behavior that was sexually inappropriate.  The argument Tipps now makes that she was "physically molested" when Hull "groped [her] on her buttocks and near her genitals" is contradicted by her deposition testimony.

Tipps also takes issue with Doris Shelton's comment that Hull "would have been fired on the spot" if he had instead presented the dildo to her.  The record does not support Tipps's contention that this is additional evidence of hostile and offensive conduct.  When Shelton's comments are examined in context, it is apparent that she is referring to her statement that Tipps "invited" the harassment and "played a role" in being harassed.  Tipps does not dispute Shelton was told that Tipps seemed to enjoy the August incident.  It appears Shelton is simply suggesting that, if Hull had presented the dildo to someone who did not at least appear "to invite inappropriate conduct with inappropriate conduct of their own," then Hull would immediately have been terminated.  As Laidlaw asserts, moreover, even accepting Tipps's preferred interpretation, the distinction Shelton allegedly

drew was between managers and other employees, not between men and women.  The Court is unable to conclude that Shelton's comment is additional evidence of hostile conduct.

Contrary to Tipps's argument, the record does not show there was a pattern of harassing conduct.  It appears there was only one incident of unwelcome conduct.  As the Court previously noted, however, one incident can be sufficiently severe to create an objectively hostile work environment.  In this case, the Court concludes that the single instance of harassment was not severe or pervasive enough to be actionable.  This case is somewhat analogous to Pryor, 212 F.3d at 977-78, wherein the Seventh Circuit held it was not actionable when a supervisor for no legitimate reason showed the plaintiff "a book that had pictures of women in bondage or black leather."  Although the single instance of harassment in this case was entirely inappropriate for the workplace, the Court concludes that it was not sufficiently severe so as to constitute actionable harassment.

(3)

Even if the single instance was sufficiently severe and pervasive, the

19

Court notes that Laidlaw is also entitled to summary judgment because there is no basis for employer liability. Laidlaw took reasonable steps to remedy its inappropriate behavior. Tipps asserts there are several problems with the letters issued by Laidlaw: (1) they say nothing about being disciplinary in nature; (2) contain no language indicating they are written warnings of any kind; (3) lack the corresponding "Employee Discipline Form" found in every other incident involving employees of Laidlaw disclosed in discovery; and (4) include as a recipient the victim of the sexual harassment.

The letters to Hull and Motley both state, "When the policy is violated, the company has an obligation to take appropriate disciplinary action, up to and including dismissal." Tipps has pointed to no authority which holds that any specific language must be used in disciplining employees for inappropriate behavior. The letters were obviously disciplinary in nature and appear to be appropriate responses to the employees' misconduct. Although Tipps complains that as the victim she should not have received a letter, the letter sent to her concerned her earlier

participation in conversations and jokes of a sexual nature which was not discovered until the investigation of the incident at issue in this case.  Tipps admitted to engaging in the conduct for which she received the warning. The letter to Tipps is not relevant to whether Laidlaw took reasonable steps to remedy the inappropriate behavior of Hull and Motley.  The Court concludes that Laidlaw satisfied its duty to protect Tipps from further harassment.[2]

## III. CONCLUSION

Laidlaw is entitled to summary judgment because Tipps is unable to meet two of the four elements of her sexual harassment case.  After viewing the evidence in the light most favorable to Tipps, the Court concludes no reasonable jury could determine that the harassing conduct was sufficiently severe and pervasive so as to alter the terms and conditions of employment. Because Laidlaw took appropriate steps upon learning of the harassment, moreover, the Court also finds there is no basis for employer liability.

---

[2]The Court agrees with Laidlaw that the fact Hull was later accused of acting inappropriately toward a high school student has no relevance to whether Laidlaw satisfied its duty to protect Tipps from further harassment.

21

<u>Ergo</u>, the Defendant's motion for summary judgment [d/e 15] is ALLOWED.  The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

ENTER: January 16, 2008

                FOR THE COURT:

                                    s/Richard Mills
                                    United States District Judge